IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALAN MOORE AND TERESA BERKSHIRE, | : | |
| Plaintiffs, | : | Case No. 3:11-cv-121 |
| v. | | |
| PENNROSE PROPERTIES, LLC AND KAPP CONSTRUCTION CO., INC., | : | JUDGE WALTER H. RICE |
| Defendants. | | |

---

DECISION AND ENTRY OVERRULING AS MOOT THE
MOTION TO DISMISS AND REQUEST FOR A HEARING (DOC. #49)
AND THE MOTION TO DISMISS (DOC. #50) FILED BY DEFENDANT
KAPP CONSTRUCTION COMPANY, INC., AND SUSTAINING IN PART
AND OVERRULING IN PART THE MOTION TO DISMISS FILED BY
DEFENDANT PENNROSE PROPERTIES, LLC (DOC. #51); RELATOR'S
MOTION FOR LEAVE TO FILE NOTICE OF SUPPLEMENTAL
AUTHORITY IN SUPPORT OF HIS OPPOSITION TO DEFENDANT
PENNROSE PROPERTIES, LLC'S, MOTION TO DISMISS (DOC. #78) IS
OVERRULED AS MOOT; THE FIRST AMENDED COMPLAINT (DOC.
#39) IS STRICKEN, AND ALL CLAIMS IN THE COMPLAINT (DOC. #2)
ARE DISMISSED WITHOUT PREJUDICE; TERMINATION ENTRY.

---

Pending before the Court are three Motions to Dismiss (Doc. #49, Doc. #50,

and Doc. #51) filed by Defendants Kapp Construction Company, Inc. ("Kapp") and

Defendant Pennrose Properties, LLC ("Pennrose") (collectively, "Defendants"). For

the reasons set forth below, the Court SUSTAINS Pennrose's Motion to Dismiss

(Doc. #51), insofar as it challenges the filing of this action under the first-to-file bar

under 31 U.S.C. § 3730(b)(5), and OVERRULES said motion on all other grounds. Kapp's Motions to Dismiss (Doc. #49 and Doc. #50) are OVERRULED AS MOOT.

## I.    RELEVANT PROCEDURAL BACKGROUND

Relator Alan W. Moore ("Moore") has filed a number of *qui tam* actions against Defendants under the False Claims Act ("FCA"), 31 U.S.C. § 3730.  On June 26, 2009, he and Local 18 of the International Union of Operating Engineers ("Union") filed suit as Relators against Defendants in the United States District Court for the Southern District of Ohio, Eastern Division at Columbus, alleging that Defendants caused the Springfield Metropolitan Housing Authority ("SMHA") to submit false claims under construction contracts to the United States.  The case was assigned Case No. 2:09-cv-536 ("536 Case").

While that case was pending, on September 23, 2010, Relators Moore and Teresa Berkshire ("Berkshire") filed another *qui tam* suit under the FCA against Defendants in the United States District Court for the Southern District of Ohio, Eastern Division at Columbus.  In the new case, the Union was named as a defendant.  Moore and Berkshire asserted that only they, not the Union, had uncovered the fraud alleged against Defendants.  They further alleged that the Union had attempted to stymie their efforts to collect evidence of fraud against Defendants before wrongfully asserting itself as a Relator in the 536 Case.  The new case was assigned Case No. 2:10-cv-861 ("861 Case").

2

On November 22, 2010, Moore and Mark Johnson ("Johnson") filed suit, again in the Eastern Division at Columbus of the United States District Court for the Southern District of Ohio, against Kapp and C&N Industrial Contractors Company, Inc. ("C&N"), alleging that Defendants had committed fraud under contracts funded by the United States in connection with another construction project in Springfield, Ohio. The case was assigned Case No. 2:10-cv-1051 ("1051 Case").

All three cases were assigned to the Honorable Michael H. Watson in Columbus, who transferred the first two cases to the Western Division at Dayton of the United States District Court for the Southern District of Ohio on April 8, 2011. The 1051 case was not transferred, and was closed on June 22, 2011, after the parties stipulated to a dismissal without prejudice.

After the transfers, the 536 Case was assigned Case No. 3:11-cv-00120 ("120 Case") and placed on the docket of Judge Thomas M. Rose. The 861 Case was assigned Case No. 3:11-cv-00121 ("121 Case") and placed on the docket of Judge Walter H. Rice. On June 24, 2011, the 120 Case was transferred onto the docket of Judge Rice. 120 Case at Doc. #30.

On November 7, 2011, the Union and Moore moved the Court for an order dismissing the 120 Case without prejudice. 120 Case at Doc. #35. In support of the motion, they informed the Court that the Government had elected not to intervene in the action, and they did not wish "to proceed jointly to pursue the Defendants" in the action. The Government filed a Notice of Consent to Relators'

Stipulation of dismissal on November 8, 2011. 120 Case at Doc. #38. The Court

dismissed the 120 Case without prejudice on November 8, 2011. 120 Case at

Doc. #39.

On November 1, 2011, the Government informed the Court that it had

decided not to intervene in this action, the 121 Case. Doc. #13. Accordingly, the

Court unsealed the Complaint and ordered it to be served upon Defendants. Doc.

#14. After receiving no indication that the Complaint had been served, the Court

sent a letter on April 2, 2012, to Relators' attorney, Dorothy Gamiere, to inquire

whether they intended to pursue their claims. Doc. #17. The Court received no

response, and sent a follow up letter on May 7, 2012. Doc. #18. When the Court

received no further response, it dismissed the case for failure of prosecution on

June 15, 2012. Doc. #15.

On March 3, 2013, Relators Moore and Berkshire filed a Motion to Vacate

the Court's Dismissal Order, explaining that Ms. Gamiere had grown ill and passed

away shortly before the Court had ordered the unsealing of the Complaint, and the

Court's letters to her had not been received by the successor attorney, Maria E.

Quinn. Doc. #16. The Court sustained the motion, reactivated the case on its

docket, and issued orders to Relators to serve the Complaint on Defendants. Doc.

#19 and Doc. #20. Defendants were served on March 11, 2014. Doc. #24 and

Doc. #25. On June 6, 2014, Relator Moore filed a First Amended Complaint, with

several hundred pages of attached exhibits, which elaborated on the FCA claims

alleged against Defendants. Doc. #39. The First Amended Complaint did not

4

name Berkshire as a Relator in its caption, and identified her in its allegations only as a "Business Agent" of "a local union" who had worked with Moore in uncovering the alleged fraud. *Id.* at 3.

On July 6, 2014, Kapp filed a Motion to Unseal All Pleadings in Cases 2:09-cv-536, 3:11-cv-120, 2:10-cv-1051, 2:10-cv-861, and 3:11-cv-121 (hereinafter, "Motion to Unseal") (Doc. #48), a Motion to Dismiss (Doc. #49) challenging the reactivation of the case on the Court's docket after the dismissal for failure to prosecute, and a Motion to Dismiss under Rule 12(b)(1), 12(b)(5), and 12(b)(7) of the Federal Rules of Civil Procedure (Doc. #50). On July 7, 2014, Pennrose also filed a Motion to Dismiss (Doc. #51), and on July 16, 2014, Pennrose filed a Motion to Unseal, joining Kapp's motion and adopting its arguments (Doc. #55).[1]

In its Decision and Entry of November 17, 2014, the Court sustained in part and overruled in part Defendants' Motion to Unseal. Doc. #66. The Court sustained the motion insofar as it requested that the Court lift the seal on all cases except Case 1051. The motion was overruled with regards to that case because it had never been transferred to this Court. Furthermore, recognizing that Defendants might wish to supplement their pending Motions to Dismiss after reviewing the previously sealed docket entries, the Court provided a briefing schedule for filing Supplemental Memoranda, as well as Response Memoranda by Relator.

_____

[1] Because Kapp has indicated that it adopts Pennrose's arguments for dismissal, the Court refers to the arguments in Pennrose's Motion to Dismiss (Doc. #51) as those of "Defendants."

On December 23, 2014, and December 29, 2014, Defendants filed Supplemental Memoranda in Support of the Motions to Dismiss. Doc. #70 & Doc. #71. Relator Moore filed Responses in Opposition to Defendants' Motions to Dismiss on March 4, 2015.[2] Doc. #75, #76, & #77.

Defendants argue for dismissal of this case on a number of grounds. Pennrose argues that Relator's First Amended Complaint fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) because it does not meet the heightened pleading standard applicable to FCA claims under Fed. R. Civ. P. 9(b). Doc. #51 at 11-12. Kapp criticizes Relator's failure to join the SMHA as a necessary or indispensable party under Fed. R. Civ. P. 19(a), requiring dismissal under Fed. R. Civ. P. 12(b)(7). Doc. #50 at 7. Both Defendants argue that dismissal for insufficiency of service of process under Rule 12(b)(5) is warranted because they were not served within 120 days of the unsealing of the Complaint, as required by Rule 4(m). *Id.* at 4; Doc. #51 at 34. Pennrose's Supplemental Memorandum raises a statute of limitations issue. Doc. #71 at13. Both Defendants also make a colorable argument that the Court should not have granted

---

[2] On March 19, 2015, Relator Moore filed a Motion for Leave to File Notice of Supplemental Authority in Support of His Opposition to Defendant Pennrose Properties, LLC's, Motion to Dismiss. Doc. #78. After reviewing the recently-decided case law provided by Relator, the Court notes that it pertains to Defendants' argument that the original Complaint failed to state a claim under Fed. Rule Civ. P. 9(b), and, more particularly, 31 U.S.C. § 3729. While this authority is illuminating, it does not affect the analysis that the original Complaint did, in fact, satisfy Rule 9(b), or the Court's ultimate conclusion that the first-to-file bar applies in this case. Accordingly, said Motion is overruled as moot.

the Motion for Relief from Judgment under Rule 60(b). Doc. #49; Doc. #70; Doc. #71.

However, the Court's "[s]ubject matter jurisdiction is always a threshold determination," and the issue can be raised by the parties at any time or by the Court *sua sponte*. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007); Fed. R. Civ. P. 12(h)(3); *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir.2009). The Court must, therefore, consider whether Defendants' two jurisdictional arguments, the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4)(A), and the statute's first-to-file bar, 31 U.S.C. § 3730(b)(5), apply in this case. As explained below, the Court does not agree that the public disclosure bar so applies. However, because the first-to-file bar does apply, Defendants are entitled to dismissal of this case on that basis, obviating the need to consider their non-jurisdictional arguments for dismissal.

## II.   STANDARD OF REVIEW – MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

A challenge to the subject matter jurisdiction brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure may either be facial or factual. *Carrier Corp. v. Outokumpu Oyj*, 673 F. 3d 430, 440 (6th Cir. 2012). A facial challenge requires all of the plaintiff's allegations to be accepted as true, "much as with a Rule 12(b)(6) motion." *Id.* In contrast, a factual challenge to the court's subject matter jurisdiction allows the court to "weigh evidence to confirm the existence of the factual predicates for subject matter jurisdiction," without presuming the truth

7

of the allegations. *Id.* (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.

3d 1125, 1134 (6th Cir. 1996)). When a Rule 12(b)(1) motion attacks the factual

basis for jurisdiction, the district court must weigh the evidence, and the plaintiff

has the burden of proving that the court has jurisdiction over the subject matter.

*Golden v. Gorno Bros.*, 410 F.3d 879, 881 (6th Cir. 2005). If a challenge is

successful, the Court must dismiss the action. *Loren v. Blue Cross & Blue Shield*

*of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) (quoting *Steel Co. v. Citizens for a*

*Better Env't*, 523 U.S. 83, 94 (1998) and stating that "[j]urisdiction is power to

declare the law, and when it ceases to exist, the only function remaining to the

court is that of announcing the fact and dismissing the case").

Here, Defendants have brought a factual attack on the Court's subject

matter jurisdiction, based on facts arising from the litigation of the 120 Case. "In

the case of a factual attack, a court has broad discretion with respect to what

evidence to consider in deciding whether subject matter jurisdiction exists,

including evidence outside of the pleadings, and has the power to weigh the

evidence and determine the effect of that evidence on the court's authority to hear

the case." *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014). The

relevant facts arose from previous litigation in this Court, and the parties have

pointed out no disputed issue of fact or the need to present evidence beyond what

exists on the dockets of the 120 Case and this action. Thus, the Court concludes

that no evidentiary hearing is necessary to determine whether the jurisdictional

bars in question apply in this case. *See, e.g.*, *In re Natural Gas Royalties Qui Tam*

8

*Litig.*, 566 F.3d 956, 964 (10th Cir. 2009) (observing that "[t]he first-to-file bar is designed to be quickly and easily determinable, simply requiring a side-by-side comparison of the complaints"); *United States ex rel. Palmieri v. Alpharma, Inc.*, 928 F. Supp. 2d 840, 848 (D. Md. 2013) (stating that "[w]hether the first-to-file rule bars this case depends on a comparison of the date and content of the pleadings in this case with the date and content of the pleadings in" the earlier case).

## III.    ANALYSIS

In enacting the FCA, "the objective of Congress was broadly to protect the funds and property of the Government from fraudulent claims, regardless of the particular form, or function, of the government instrumentality upon which such claims were made." *Rainwater v. United States*, 356 U.S. 590, 592 (1958).  To achieve that purpose, the FCA imposes liability upon anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "a false record or statement material to a false or fraudulent claim" to the United States.  31 U.S.C. § 3729(a).  The FCA allows for civil actions brought by either the Attorney General or by "private persons."  *Id.* § 3730(a)–(b).  A private person, known as a "relator," is entitled to "bring a *qui tam* civil action 'for the person and for the United States Government' against the alleged false claimant, 'in the name of the Government.'"  *Vermont Agency of Natural*

9

Case: 3:11-cv-00121-WHR Doc #: 79 Filed: 03/24/15 Page: 10 of 43 PAGEID #: 1469

*Resources v. United States ex rel. Stevens*, 529 U.S. 765, 769 (quoting 31 U.S.C. § 3730(b)(1)).

The FCA sets forth a specific procedure that a relator must comply with when filing a *qui tam* action. The relator must file the complaint and "substantially all material evidence and information the person possesses" to support the fraud claim *in camera* with the Court, which must "remain under seal for at least 60 days." 31 U.S.C. § 3730(b)(2). The relator must serve a copy of the complaint on the United States, but it "shall not be served on the defendant until the court so orders." *Id.* After investigating the claim, the United States "may elect to intervene and proceed with the action" during the 60 day period. *Id.* Alternatively, the United States may "move the court for extensions of the time during which the complaint remains under seal," until such time as it either decides to pursue the case or declines to intervene. *Id.* § 3730(b)(3). If the United States declines to do so, the relator may nevertheless proceed with the action and prosecute the FCA claim. *Id.* § 3730(c)(3).

However, the FCA also imposes several jurisdictional bars on the filing of *qui tam* actions, two of which are relevant here: the Public Disclosure bar under 31 U.S.C. § 3730(e)(4) and the First-to-File bar under 31 U.S.C. § 3730(b)(5). The Court will consider each in turn.

10

### A.   The Public Disclosure Bar under 31 U.S.C. § 3730(e)(4)

Defendants have moved to dismiss this action for lack of subject matter

jurisdiction, under Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing

that the FCA's "public disclosure" bar under 31 U.S.C. § 3730(e)(4) was triggered

when Moore and the Union filed the 120 Case and brought the allegations of fraud

to the Government's attention.  Doc. #51.  Relator Moore asserts that the 2010

amendments to the FCA apply in this case, and those amendments removed the

jurisdictional bar under 31 U.S.C. § 3730(e)(4).  Doc. #77 at 64.  Defendants

disagree with that assertion, and argue that the pre-amendment version of the

statute controls.  Because of this controversy, the Court must decide the

preliminary question of which version of the statute applies in this case.

#### 1.  *The 2010 Amendments to the FCA's Public Disclosure Bar*

When Congress passed the Patient Protection and Affordable Care Act

("PPACA"), it amended the language of the FCA's public disclosure bar, effective

March 23, 2010.  Publ. L. 111–148, § 10104(j)(2), 124 Stat. 119, 901–02

(2010).  In *U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908 (4th Cir. 2013),

the Fourth Circuit described the effect of the amendment:

> Under the prior version of the statute, § 3730(e)(4) operated as a
> jurisdictional limitation—the public-disclosure bar, if applicable,
> divested the district court of subject matter jurisdiction over the
> action.  *See* 31 U.S.C. § 3730(e)(4) (2005) ("*No court shall have
> jurisdiction* over an action under this section based upon the public
> disclosure of allegations...."  It is apparent, however, that the public-
> disclosure bar is no longer jurisdictional.  The amended statute does

11

> not mention jurisdiction but instead states that in cases where the bar
> is applicable, the court "shall dismiss" the action "unless opposed by
> the Government." 31 U.S.C. § 3730(e)(4) (2010). The 2010
> amendments thus deleted the unambiguous jurisdiction-removing
> language previously contained in § 3730(e)(4) and replaced it with a
> generic, not-obviously-jurisdictional phrase ("shall dismiss"), while at
> the same time retaining jurisdiction-removing language in
> §§ 3730(e)(1) and (e)(2).

*Id.* at 916 (some citations omitted).

Citing *Schindler Elevator Corp. v. U.S. ex rel.* Kirk, 131 S. Ct. 1885 (2011),

Moore argues that "the U.S. Supreme Court and other courts have repeatedly held

that the date of the filing of the complaint conclusively determines which version

of the public disclosure bar applies." Doc. #77 at 63. Although the date of the

filing of a complaint may be relevant to the question of which version of the

statute applies, Moore fails to identify the truly determinative factor: the date of

the conduct on which the action is based. The "principle that the legal effect of

conduct should ordinarily be assessed under the law that existed when the conduct

took place has timeless and universal appeal." *Landgraf v. USI Film Prods.*, 511

U.S. 244, 265 (1994) (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494

U.S. 827, 855 (1990) (Scalia, J., concurring)). For this reason, the Supreme Court

has identified a "presumption against retroactive legislation [that] is deeply rooted

in our jurisprudence," which has historically included a number of safeguards to

ensure "that individuals should have an opportunity to know what the law is and to

conform their conduct accordingly; settled expectations should not be lightly

disrupted." *Landgraf*, 511 U.S. at 265-66 (discussing examples of the

12

"antiretroactivity principle" expressed in the U.S. Constitution, such as the prohibitions on Ex Post Facto laws and Bills of Attainder, and the protections of the Due Process Clause). The "time-honored presumption" against retroactive application of legislation must be applied "unless Congress has clearly manifested its intent to the contrary." *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 946 (1997).

A statute has retroactive effect if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Id.* at 947 (quoting *Landgraf*, 511 U.S. at 269)). Application of the PPACA amendment to the FCA's public disclosure bar would have retroactive effect because it would take away the jurisdictional defense available to a defendant that existed under the earlier version of the law. *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 313 n.1 (2010). Because the PPACA amendment to the FCA's public disclosure bar was silent regarding retroactivity, the presumption against retroactivity applies. *See id.* (noting that "[t]he legislation makes no mention of retroactivity"). Thus, the pre-amendment version of the statute applies to conduct that took place before the amendment's effective date of March 23, 2010. *E.g.*, *United States v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, --- F.3d ---, No. 13-6645, 2015 WL 774887, at *3 n.3 (6th Cir. Feb. 25, 2015) (applying pre-amendment version of the FCA's public disclosure bar, where passage of the PPACA occurred "after the

13

alleged misconduct occurred" but before the relator filed *qui tam* action). Here, where all the fraudulent conduct allegedly occurred in 2009 or earlier, the Court must apply the statute as it existed at that time. Thus, the Court will apply the public disclosure bar in the version existing prior to its March 23, 2010, amendment.

Moore cites *Schindler Elevator Corp. v. United States ex rel.* Kirk, 131 S. Ct. 1885 (2011), to support the contention that the post-amendment version of the statute applies, but it does not help his argument. In *Schindler Elevator*, the Supreme Court held that a federal agency's response to a records request made under the Freedom of Information Act, 5 U.S.C. § 552, qualified as a "report" that triggered the public disclosure bar. 131 S. Ct. at 1889. Neither party argued for the retroactive application of the PPACA's amendments to the public disclosure bar. Citing *Graham*, the Supreme Court noted in a footnote that "the amendments are not applicable to pending cases," and that it would "refer[] to the statute as it existed when the suit was filed." *Id.* at 1889 n.1. This statement is a shorthand application of the nonretroactivity principle that is valid if *both* the allegations of misconduct *and* the filing of the complaint occurred before the amendment. Here, however, where the allegations occurred before the amendment, but Relator filed suit after its March 23, 2010, effective date, "[t]he retroactivity inquiry looks to when the underlying conduct occurred, not when the complaint was filed." *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 915 (4th Cir. 2013). As discussed, that inquiry leads to the conclusion that the version of the FCA's public

14

disclosure bar that existed prior to the March 23, 2010, amendment applies in this case.

### 2. *Application of the FCA's Public Disclosure Bar*

The FCA's public disclosure bar "limits the subject matter jurisdiction of federal courts over *qui tam* actions based upon previously disclosed information." *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 973 (6th Cir. 2005). As set forth in the version of the FCA applicable to the present case, the public disclosure bar states that:

> (A) No court shall have jurisdiction over an action under [the FCA] based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C.A. § 3730(e)(4)(A) (effective to Mar. 22, 2010).

"To determine whether § 3730(e)(4)(A)'s jurisdictional bar applies, a court must consider 'first whether there has been any public disclosure of fraud, and second whether the allegations in the instant case are 'based upon' the previously disclosed fraud.'" *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 511 (6th Cir. 2009) (quoting *United States ex rel. Gilligan v. Medtronic, Inc.,* 403 F.3d 386, 389 (6th Cir.2005)). A court is only required to consider the "original

15

source" exception if all the elements of the public disclosure bar set forth in § 3730(e)(4)(A) are satisfied. *United States v. A.D. Roe Co.*, 186 F.3d 717, 725 (6th Cir. 1999).

Defendants first argue that when "the Union brought the matter to the attention of the Government" in the 120 Case, it triggered the public disclosure bar. Doc. #51 at 42. Defendants point to the averment by Moore and the Union, the Relators in the 120 Case, that they had "voluntarily disclosed to appropriate governmental authorities substantially all of the material evidence upon which this action is based, including by disclosure to the U.S Attorney for the Southern District of Ohio and HUD." Compl. ¶ 14 in Case 120, Doc. #10 at 4. However, the FCA *requires* a relator to make such a disclosure to the Government at the time he files suit. Under 31 U.S.C. § 3730(b)(2), a private person filing suit must serve "[a] copy of the complaint and written disclosure of substantially all material evidence and information the person possesses" on the Government. "It should be obvious that disclosure to the government by a *qui tam* plaintiff of the information on which the complaint is based, as mandated in § 3730([b])(2), is not "public disclosure" under § 3730(e)(4)(A), or the jurisdictional bar would prohibit any *qui tam* action whatsoever by someone who was not an original source, which is clearly not the intent of Congress." *United States v. Bank of Farmington*, 166 F.3d 853, 862 (7th Cir. 1999), *overruled on other grounds by Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009). The Union's compliance with the statutory notice requirement, which exists for the purpose of allowing the

16

Government a chance to investigate the allegations while the case is still under seal before a defendant is aware of the suit, in no way qualifies as a "public disclosure."

Even if the Relators' statement referred to some other disclosure to the Government, other than disclosure that complied with the notice requirement of § 3730(b)(2), the mere fact that it was made to the Government does not make it a "public disclosure."  The weight of authority holds that "the plain meaning of § 3730(e)(4) requires some affirmative act of disclosure to the public outside the government." *United States v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, --- F.3d ----, No. 13-6645 at 9-10 (6th Cir. Feb. 25, 2015) (collecting cases).  In *Chattanooga*, the Sixth Circuit held that the defendant's disclosure to the Government of information in the course of an "administrative audit and investigation" conducted before the relator filed suit "did not constitute a public disclosure that would trigger the public-disclosure bar." *Id.* at 11.  Defendants point to no domain outside the Government where the Union made any disclosure. In short, the Union made no "public disclosure" when it complied with the § 3730(b)(2) requirement to provide the Government with the evidence that supported the 120 Case.

Defendants also argue that the filing of the original Complaint in the 120 Case constituted a "public disclosure" under § 3730(e)(4), based on the Sixth Circuit's holdings in *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503 (2009) and *United States ex rel. McKenzie v. BellSouth Telecommunications, Inc.*,

17

123 F.3d 935 (6th Cir. 1997). Doc. #51 at 42. In *Poteet*, the plaintiff filed suit under the FCA, alleging that the defendants had induced a number of physicians and hospitals to file fraudulent Medicare and Medicaid claims. 552 F.3d at 508. Before she filed her *qui tam* suit, two other lawsuits had been filed: a wrongful termination case in state court and another *qui tam* suit. *Id.* The Sixth Circuit held that the wrongful termination suit qualified as a "public disclosure" under the statute because it had been filed in state court, and its allegations "were sufficient to put the government on notice of potential fraud" because they paralleled those made by the *Poteet* plaintiff. *Id.* at 512-514. Furthermore, the state court lawsuit's public disclosure also applied to the *qui tam* suit filed before *Poteet*. *Id.* at 517-18. Otherwise, the previous *qui tam* suit would have precluded the *Poteet* plaintiff's suit under the first-to-file bar of § 3730(b)(5). *Id. McKenzie* also involved two previous lawsuits, one of which was a wrongful termination suit against the defendant in state court, and the other a *qui tam* action. 123 F.3d at 939. Both suits triggered the public disclosure bar because the cases had been publicized in newspapers, and the *McKenzie* plaintiff's allegations were "the same as" or "virtually identical" to the allegations in the previous lawsuits. *Id.* at 939-40.

*Poteet* and *McKenzie* are distinguishable because neither of them stands for the proposition that a previous *qui tam* case filed under seal qualifies as a "public disclosure." In *Poteet*, it was the state court wrongful termination case that made the fraud allegations public, not the previous *qui tam* case. In *McKenzie*, the prior

18

*qui tam* suit had either been unsealed at some point or its seal had been breached, which is evident from the court's observation that the plaintiff "acknowledge[d] that she showed her supervisor a newspaper article concerning the [previous *qui tam*] case." 123 F.3d at 934. In neither case was a sealed *qui tam* case the source of the "public disclosure."

Defendants do not explain how a case filed under seal creates a "public disclosure." In *United States ex rel. LeBlanc v. Raytheon Co.,* 913 F.2d 17, 20 (1st Cir. 1990), the First Circuit rejected the idea that:

> the filing of a *qui tam* action is itself a "public disclosure." This cannot be. Such an action is filed under seal without service on anyone other than the United States and remains non-public until the district court enters an order lifting the seal. To hold otherwise would be to render each and every filing a "public disclosure," thus barring all *qui tam* actions.

Furthermore, the idea that a sealed case constitutes a "public disclosure" is illogical when examined in light of the "primary purpose of the under-seal requirement." *United States ex rel. Summers v. LHC Grp., Inc.*, 623 F.3d 287, 292 (6th Cir. 2010). A *qui tam* case under the FCA must be sealed "to permit the Government sufficient time in which it may ascertain the status quo and come to a decision as to whether it will intervene," and allows the Government to do so "prior to the defendant's learning of the litigation" while "prevent[ing] alleged wrongdoers from being tipped off that they were under investigation." *Id.* (quoting *Erickson ex rel. United States v. Am. Inst. of Biological Scis*, 716 F. Supp. 908, 912 (E.D.Va.1989)). A *qui tam* case brought under the FCA is non-public by

19

design, and its mere filing in no way creates a "public disclosure" under 31 U.S.C. § 3730(e)(4).

In a Supplemental Memorandum, Defendant Pennrose presents an additional argument asserting that public disclosure occurred: Moore breached the seal of the 120 Case by disclosing the allegations to Berkshire and her attorneys. Doc. #71 at 15. Defendants do not, however, explain how any discussion with Berkshire, Moore's Co-Relator and investigative partner, might qualify as a "public disclosure." Defendants do not suggest that Berkshire contacted a newspaper or television station with the allegations. Nor do Defendants allege that they learned of the case based on her involvement with the investigation. There is simply no evidence to suggest that the FCA's goal of keeping "alleged wrongdoers" in the dark was ever compromised by discussions between Moore and Berkshire. *Summers*, 623 F.3d at 292.

Furthermore, contrary to Defendants' assertion, the filing of a *qui tam* complaint does not categorically prevent a relator from any discussion of the alleged fraud. *See American Civil Liberties Union v. Holder*, 673 F.3d 245, 252-53 (4th Cir. 2011). In *ACLU v. Holder*, for example, the Fourth Circuit rejected a First Amendment "right of access" challenge to a sealed FCA case, holding that Congress had narrowly tailored the FCA to serve a "compelling interest in protecting the integrity of ongoing fraud investigations." *Id.* at 253. When discussing the narrow scope of the statute, the court observed that "the seal provisions limit the relator only from publicly discussing the filing of the *qui tam*

20

complaint. Nothing in the FCA prevents the *qui tam* relator from disclosing the existence of the fraud." *Id.* at 254. Thus, in addition to ill-serving the purpose of the FCA by cramping the relator's investigative efforts, a requirement that the seal prevent Moore from any discussion of the fraud allegations with his co-investigator would be a constitutionally suspect restriction that exceeds the discretion required by the FCA.

In conclusion, Defendants have not demonstrated that any "public disclosure" occurred prior to the filing of this action that would trigger the jurisdictional bar under 31 U.S.C. § 3730(e)(4)(A). Accordingly, Pennrose's Motion to Dismiss (Doc. #51) is overruled, insofar as it seeks dismissal of this action on that basis.

## B. The First-to-File bar under 31 U.S.C. § 3730(b)(5)

Under the first-to-file bar, "[w]hen a person brings an action under [the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C.A. § 3730(b)(5). The first-to-file bar is a jurisdictional limitation that "furthers the policies animating the FCA by ensuring that the government has notice of the essential facts of an allegedly fraudulent scheme while, at the same time, preventing 'opportunistic plaintiffs from bringing parasitic lawsuits.'" *Poteet*, 552 F.3d at 516 (quoting *Walburn*, 431 F.3d at 970). In this case, the first-to-file bar raises several questions, each of which must be answered in the affirmative for the bar to apply.

21

First, was the 120 Case a "pending action" when this action, the 121 Case, was brought? Second, does the bar apply if the same *qui tam* relator files both actions? Finally, is the 121 Case a "related case based on the facts underlying" the 120 Case? The Court will consider each question in turn.

### 1. Was the 120 Case a "Pending Action" under 31 U.S.C. § 3730(b)(5)?

The Sixth Circuit has only interpreted the language of the first-to-file bar in a few cases, and the phrase "pending action" was not at issue in any of them.[3] *See Poteet*, 552 F.3d at 516-18 (comparing complaint in first action with complaint in later-filed action, recognizing that they alleged the same essential facts, but holding that the public disclosure barred the first action, so it could not function as a bar to a later-filed action) *and Walburn*, 431 F.3d at 971-74 (comparing complaints and holding that although the first-to-file bar did not apply because the first action was "legally infirm from its inception," due to its noncompliance with the heightened pleading requirements for fraud under Fed. R. Civ. P. 9(b), a prior public disclosure did bar action). Thus, the Court must look for interpretive

_____

[3] Two other Sixth Circuit cases reference the first-to-file bar, but do not concern its application, much less provide guidance for interpreting its language. *United States ex rel. Lefan v. Gen. Elec. Co.*, 397 F. App'x 144, 149-50 (6th Cir. 2010) (holding that after the settlement of an FCA action, the relator's attorneys were not entitled to fees for litigating the issue of the first-to-file bar); *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 523 (6th Cir. 2007) (applying *Walburn*'s analysis of a complaint that failed to comply with Fed. R. Civ. P. 9(b) to the issue of whether a relator had stated a valid *qui tam* action, which was a prerequisite to entitle him to a portion of settlement).

guidance from outside the Sixth Circuit to determine what constitutes a "pending action" under the first-to-file bar.

A review of the opinion of Circuit Courts of Appeal that have interpreted the language of the first-to-file bar reveals a uniform consensus that its language is unambiguous, and, when given its plain meaning, admits of no exceptions. *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181 (9th Cir. 2001), provides an initial example. In *Lujan*, a relator's FCA action against her employer initially survived the "public disclosure" bar on appeal, even though her allegations of fraud mirrored those of a previous *qui tam* case, because she qualified under the "original source" exception. *Id.* at 1185-86. The defendant subsequently moved for dismissal based on the first-to-file bar, because the previous case had been pending when the relator filed her case. *Id.* at 1186. Accepting this argument, the district court dismissed the case. *Id.* The relator appealed, arguing that a number of exceptions, including her status as an "original source," should be recognized under the first-to-file bar. *Id.* at 1187.

Applying standard canons of statutory interpretation, the Ninth Circuit noted that the language of the statute is unambiguous. *Id.* In contrast to the public disclosure bar, the first-to-file bar's "plain language does not contain exceptions." The court recognized that "an exception-free, first-to-file bar conforms with the dual purposes of the [FCA's] 1986 amendments: to promote incentives for whistle-blowing insiders and prevent opportunistic successive plaintiffs" from bringing FCA claims after prior cases had already alerted the Government to allegations of

23

fraud.[4]  The court rejected the relator's arguments, stating that "they would require [it] to read exceptions into the statute's plan language."

Plain language also caused the court to reject the relator's argument that the previous *qui tam* suit's dismissal precluded it from being considered a "pending action" under the first-to-file bar.  *Id.* at 1188.  The bar applied because the previous *qui tam* suit had been pending when she filed suit, and "[t]o hold that a later dismissed action was not a then-pending action would be contrary to the plain language of the statute and the legislative intent."  *Id.*  The policy goal was achieved because, "[d]ismissed or not, [the first *qui tam*] action promptly alerted the government to the essential facts of a fraudulent scheme-thereby fulfilling a goal behind the first-to-file rule."

The Seventh Circuit also subscribed to a plain language interpretation of a "pending action" in *United States ex rel. Chovanec v. Apria Healthcare Grp., Inc.*, 606 F.3d 361 (7th Cir. 2010).  In *Chovanec*, the district court dismissed a relator's *qui tam* action with prejudice under the first-to-file bar because two other *qui tam* actions based on the same allegations of fraudulent Medicare overbilling had been pending when the relator filed suit.  *Id.* at 361-62.  Four days after the district court dismissed the relator's case with prejudice, the Department of Justice settled the two previously-filed cases.  The relator moved for reconsideration, arguing that her case was no longer blocked by the previously filed cases, and, based on the

_____

[4] The current language of 31 U.S.C. § 3730(b)(5) is the result of the 1986 amendments.  Act of Oct. 27, 1986, § 3, Pub. L. 99-562, 100 Stat. 3153 (amending the FCA).

24

"time limits of the settlement," none of the *qui tam* cases overlapped.  *Id.* at 362.

The Seventh Circuit rejected this argument because it would have avoided the plain

language of the statute and created an exception allowing a later-filed case to be

stayed until the resolution of the "pending action."  *Id.*  According to the Seventh

Circuit, the termination of the "pending action" is a condition precedent to filing a

new suit under the first-to-file bar:

> One "brings" an action by commencing suit.  Many statutes are of the
> form "do not bring an action until ...", where the condition is
> exhausting administrative remedies, negotiating, or waiting a specified
> time.  Statutes of this form are understood to forbid the
> commencement of a suit; an action (or a given claim within a larger
> action) "brought" while the condition precedent is unsatisfied must be
> dismissed rather than left on ice.

*Id.* (citations omitted).

As long as a pending action has not concluded, any "related action based on

the facts underlying" it that a relator files must be dismissed.  *Id.*  "Only when the

initial action concludes without prejudice (or covers a different transaction) will a

later suit[, whether filed] by the original relator, a different relator, or the

Department of Justice[,] be permissible."  Because the previous suits and the

relator's case concerned "materially similar situations," the bar applied.  *Id.* at 365.

However, because the previous cases had been settled after the relator filed the

new suit but before the district court denied his motion for reconsideration, the

previous cases "were not pending when the district court made its final decision,"

and the action should have been dismissed, albeit without prejudice.  Thus, the

Seventh Circuit vacated the dismissal with prejudice and remanded the case to allow the relator to refile it. *Id.*

In this case, the relevant procedural events occurred as follows. Moore and the Union filed a Complaint as Co-Relators in the 120 Case on June 26, 2009. 120 Case, Doc. #10. Moore and Berkshire filed a Complaint as Co-Relators in the 121 Case on September 23, 2010. Over a year later, on November 7, 2011, Moore and the Union moved for voluntary dismissal of the 120 Case. 120 Case, Doc. #35. The 120 Case was dismissed on December 14, 2011. 120 Case, Doc. #36. Under any logical application of the plain language of the first-to-file bar, the 120 Case was a "pending action" at the time the 121 Case was filed.

Moore does not actually argue that the 120 Case was not a "pending action" when this case was filed. Rather, he contends that the bar does not apply because the 120 Case was no longer pending when he filed the First Amended Complaint on June 16, 2014. Doc. #77 at 58. Moore cites a phrase from *Chovanec* stating that "§ 3730(b)(5) applies only while the initial complaint is 'pending.'" *Id.* (citing *Chovanec*, 606 F.3d at 365). However, in context, this quote from *Chovanec* does not suggest that the filing of an amended complaint arrests the application of § 3730(b)(5). The Seventh Circuit made the statement while holding that the district court should have dismissed the relator's action without prejudice, rather than with prejudice, because the first-filed complaint was no longer pending at the time of dismissal. *Chovanec* did not hold that under the FCA's first-to-file bar, a court determines subject matter jurisdiction as of the date

26

of the filing of an amended complaint, and the case provides no support for such a proposition.

Moore's argument would create an exception to the traditional rule that a court's subject matter jurisdiction is determined at the time an action is commenced. *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004) (citing *Mollan v. Torrance*, 9 Wheat. 527 (1824) and describing the time-of-filing rule as "hornbook law"); *Tug River Coal & Salt Co. v. Brigel*, 86 F. 818, 821 (6th Cir. 1898) ("it is well settled in these and other cases that jurisdiction depends upon the state of things at the time the suit is brought"). Although this rule originated in diversity of citizenship cases, *see id.*, the principle applies to federal question cases, and, as relevant here, determining subject matter jurisdiction when applying the first-to-file bar under 31 U.S.C. § 3730(b)(5). The Sixth Circuit stated in *Poteet*, a case in which it has applied the first-to-file-bar, that "[t]he basis for jurisdiction must be apparent from the facts existing at the time the complaint is brought." *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 516 (6th Cir. 2009). Other Circuit Courts of Appeal have directly held that the time-of-filing rule applies to the first-to-file bar. *E.g.*, *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276 (10th Cir. 2004) ("We judge whether § 3730(b)(5) barred [relator's] *qui tam* action by looking at the facts as they existed at the time that action was brought"); *United States ex rel. Carter v. Halliburton Co.,* 710 F.3d 171, 183 (4th Cir. 2013) ("Following the plain language of the first-to-file bar, [relator's]'s action will be barred by *Duprey* or the *Texas* action if either case was

27

pending when [he] filed suit"), *cert. granted sub nom. Kellogg Brown & Root Servs, Inc. v. United States ex rel. Carter*, 134 S. Ct. 2899 (July 1, 2014) (No. 12–1497).

Under the FCA's first-to-file bar, the filing of an amended complaint does not create an exception to the time-of-filing rule. *United States ex rel. Branch Consultants, L.L.C. v Allstate Ins. Co.*, 782 F. Supp. 2d 248, 258-64 (2011). In *Branch Consultants,* the United States District Court for the Eastern District of Louisiana engaged in a thorough and detailed analysis to explain why, under the first-to-file bar, the filing of an amended complaint cannot create subject matter jurisdiction, which must exist at the time the *qui tam* action is filed. *Id.* Citing *Chovanec*, the court first noted that because the statutory text referred to "an 'action,' not a complaint," it emphasized "jurisdictional facts that existed at the time the action was filed, as opposed to facts that existed when the relator filed an amended complaint." *Id.* at 259. Furthermore, neither cases interpreting the "time-of-filing" rule, nor cases applying the rule under the FCA, provide any reason to create an exception that would determine subject matter jurisdiction by examining an amended complaint. *Id.* at 260-63 (discussing, *e.g.*, *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989), *Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007)(discussed below), and *Grynberg*, 390 F.3d 1276).

*Branch Consultants* also provides several reasons why determining jurisdiction from an amended complaint might frustrate the purposes of the FCA. First, allowing jurisdiction through an amendment would render "meaningless" the

28

FCA's requirement of pre-filing disclosure of the basis for the action to the government. *Id*. at 263. A "relator could provide that information to the government at a later time, and then amend the complaint, even in a trivial fashion, to ensure jurisdiction." *Id.* Second, jurisdiction created by amendment would allow a relator without "direct and independent knowledge" of fraud to "secure a place in the jurisdictional queue with merely skeletal allegations, only to then file an amended complaint after actually becoming an original source, and thereby trump any meritorious, related actions that were filed in the meantime." *Id.* at 264. Finally, the court found that "the time-of-filing rule has the advantage of simplicity" in application, particularly in the complex case before it, "which involve[d] multiple claims, complaints, and defendants, as well as other relators whose complaints have themselves been amended and involve multiple defendants." The Court finds the reasoning of *Branch Consultants* persuasive, and declines to recognize an exception to the rule that subject matter jurisdiction should be determined based on the filing of the original complaint.

Moore cites one case in which a district court held that the first-to-file bar did not bar a *qui tam* action filed while a related case was pending, because the relator filed an amended complaint after the dismissal of the first-filed case: *United States ex rel. Palmieri v. Alpharma, Inc.*, 928 F. Supp. 2d 840 (D. Md. 2013). In *Palmieri*, the first-filed case was filed four days before the relator's case, and was later dismissed. *Id.* at 849. Several months later, the relator filed an amended complaint. *Id.* at 850. The *Palmieri* court acknowledged that "[p]recedent

29

uniformly supports the view that the subsequent dismissal of a first-filed *qui tam* action, without more, cannot cure the filing of a second *qui tam* action while the first action was pending." *Id.* (citing *Walburn*, 431 F.3d at 972 n.5, and *Lujan*, 243 F.3d at 1188). Citing *Chovanec* and several other opinions that had held that the jurisdictional bar no longer applied after the dismissal of the first-filed action, the court considered such dismissal "a subsequent event of jurisdictional significance[.]" *Id.* at 850-851 (citing *Chovanec*, 606 F.3d at 365, *United States ex rel. Batiste v. SLM Corp.,* 659 F.3d 1204, 1211 (D.C. Cir. 2011), and *In re Natural Gas Royalties*, 566 F.3d 956, 964 (10th Cir. 2009)). The court also considered it "noteworthy that the Supreme Court, in a False Claims Act case (although not in the context of the first-to-file rule), has indicated that an amended complaint is jurisdictionally relevant." *Id.* at 851 (citing *Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007)). Because the Supreme Court in *Rockwell* had determined whether the public disclosure bar applied by examining the allegations of an amended complaint, *Palmieri* concluded that it could use the filing of the amended complaint to determine jurisdiction under the first-to-file bar. Thus, because the first-filed case was no longer "pending" when the amended complaint was filed, the court held that the bar did not apply. *Id.*

This reasoning confuses the significance of the allegations that demonstrate jurisdiction with the procedural act of filing an amended complaint. A plaintiff may, of course, amend a complaint in order to cure defective *allegations* of the jurisdiction which existed at the time the initial complaint was filed, but he cannot

create federal court jurisdiction where none previously existed. 28 U.S.C. § 1653; *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989). In other words, the allegations of the amended complaint that demonstrate jurisdiction are the "jurisdictionally relevant" facts, not the fact that the plaintiff amended the complaint. *Newman-Green*, 490 U.S. at 831 (stating that amending a complaint "addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves").

*Rockwell*, which *Palmieri* and *Branch Consultants* both cite, does not suggest otherwise. In *Rockwell*, the issue was whether a court may determine whether the original source exception to the FCA's public disclosure bar applies by examining the "information on which the allegations are based" in a relator's amended complaint or "a final pretrial order that superseded all prior pleadings," or if that phrase limited the examination to the allegations of the original complaint. 549 U.S. at 474. The Supreme Court held that the "information on which the allegations are based" was not limited to the allegations of the original complaint, reasoning as follows:

> In our view, the term "allegations" is not limited to the allegations of the original complaint. It includes (at a minimum) the allegations in the original complaint as amended. The statute speaks not of the allegations in the "original complaint" (or even the allegations in the "complaint"), but of the relator's "allegations" *simpliciter*. Absent some limitation of § 3730(e)(4)'s requirement to the relator's initial complaint, we will not infer one. Such a limitation would leave the relator free to plead a trivial theory of fraud for which he had some direct and independent knowledge and later amend the complaint to include theories copied from the public domain or from materials in the Government's possession. . . .

31

> The rule that subject matter jurisdiction "depends on the state of things at the time of the action brought," does not suggest a different interpretation. The state of things and the originally alleged state of things are not synonymous; demonstration that the original allegations were false will defeat jurisdiction. So also will the withdrawal of those allegations, unless they are replaced by others that establish jurisdiction. Thus, when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction.

549 U.S. at 473-74 (internal citations omitted).

Several points emerge from this discussion. First, in contrast to the language of the public disclosure bar discussed in *Rockwell*, the language of the first-to-file bar does suggest that Congress intended to isolate the determination of subject matter jurisdiction to the time of filing of a complaint. *Rockwell* declined to "infer" a "limitation" of the public disclosure bar's original-source definition "to the relator's initial complaint," due to the absence of such a limitation in the language of the statute. *Id.* at 473. The first-to-file bar, however, does place a temporal limitation on its application: "When a person brings an action under [the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). During the time an action is pending, no one else may bring a related action. In its discussion of the "condition precedent" to filing suit imposed by the language of the first-to-file bar, *Chovanec* implicitly recognized such a temporal limitation. *Chovanec*, 606 F.3d at 362.

Second, *Rockwell* is distinguishable from *Palmieri* because in *Rockwell*, the mere act of filing an amended complaint was not jurisdictionally significant. Rather, the question of subject matter jurisdiction concerned the "allegations" made in the complaint and the amended complaint. This is consistent with the Supreme Court's prior holding in *Newman-Green* that amendment "addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." 490 U.S. at 831. Thus, the phrase from *Rockwell* quoted by the *Palmieri* court, "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction," makes sense if a court must examine the *allegations* in the pleadings to determine subject matter jurisdiction. *Rockwell*, 549 U.S. at 474 (concluding that "[i]n these circumstances, we look to the allegations as amended—here, the statement of claims in the final pretrial order—to determine original-source status"). *Palmieri*, however, used this language to determine jurisdiction based not on the allegations within an amended complaint, but on its particular date of filing. When read in context, the language from *Rockwell* does not support how it was applied in *Palmieri*. The Court, therefore, agrees with the *Branch Consultants* court's interpretation of *Rockwell*: "*Rockwell* does not suggest that a plaintiff can establish jurisdiction by amendment when jurisdiction did not previously exist. Indeed, such a conclusion would be directly contrary to the Court's statement that 'demonstration that the original allegations were false will

33

defeat jurisdiction.'" *Branch Consultants*, 782 F. Supp. 2d at 261-62 (quoting *Rockwell*, 549 U.S. at 473)).

In conclusion, the Court agrees with the reasoning in *Branch Consultants*, as well as its interpretation of *Rockwell*. The Court will, therefore, determine whether the first-to-file bar applies by examining the jurisdictional facts as they existed on the date this action was commenced by the filing of the original Complaint.

### 2. *Does "No Person" under the First-to-Bar Include the Same Relator who Filed the "Pending Action"?*

The second issue raised by the first-to-file bar in this case is whether it applies when the same relator files both the first "pending action" and the later-filed action that may be subject to the bar. Under the first-to-file bar, "[w]hen a person brings an action under [the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C.A. § 3730(b)(5). The phrase "no person" appears absolute and unequivocal, and provides no basis for recognizing an exception based on the identity of the relator.

In *United States v. Cellco Partnership*, 748 F.3d 338 (D.C. Cir. 2014), the D.C. Circuit Court of Appeals rejected the argument that the first-to-file bar does not apply if the same relator files both *qui tam* actions. Applying a plain language interpretation, the court noted that "[t]he text of the statute clearly directs that 'no person' is allowed to bring a related suit." *Id.* at 342. The relator also argued that applying the bar to his case did not serve the policy of the first-to-file bar, because

34

"a litigant cannot race himself to the courthouse or divide a bounty with himself." *Id.* at 343. The court rejected this argument because the bar also serves to screen out "suits which the government is capable of pursuing itself," based on the notice received when the first suit is filed. *Id.* (quoting *United States ex rel. Batiste v. SLM Corp.,* 659 F.3d 1204, 1208 (D.C. Cir. 2011)). Thus, the court held that the first-to-file bar applied if the same relator files both the original *qui tam* suit and a "related action." *Id.* Other courts have also applied the bar when the same relator files both actions. *United States ex rel. Heath v. AT&T, Inc.*, --- F. Supp. 3d ---, 2014 WL 2584191 (D.D.C. June 10, 2014); *United States ex rel. Shea v. Verizon Bus. Network Servs., Inc.*, 904 F. Supp. 2d 28, 34 (D.D.C. 2012) (noting that the first-to-file bar "states without ambiguity or qualification that 'no person' other than the Government may bring successive related actions"); *U.S. ex rel. Smith v. Yale-New Haven Hosp., Inc.*, 411 F. Supp. 2d 64, 74-75 (D. Conn. 2005) (noting that "the plain language of the statute is clear," and that the phrase "'no person' would apply equally to the original relator as any other person"). Here, Moore was one of two co-relators at the commencement of both the 120 Case and the 121 Case. Thus, if the Court ultimately concludes that the cases were related, his status as a Relator in both actions does not preclude application of the first-to-file bar.

### 3. Is the 121 Case a "Related Action Based on the Facts Underlying" the 120 Case?

The final question to consider is whether the 121 Case is a "related action based on the facts underlying" the 120 Case. 31 U.S.C. § 3730(b)(5). "In order to determine whether a relator's complaint runs afoul of the [] first-to-file bar, a court must compare the relator's complaint with the allegedly first-filed complaint." *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 516 (6th Cir. 2009) (citing *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 971 (6th Cir. 2005)). If both complaints "allege 'all the essential facts' of the underlying fraud," the bar applies, even if the later-filed complaint "incorporates somewhat different details." *Walburn*, 431 F.3d at 971 (quoting *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 232-33 (3d Cir. 1998)). "The later complaint 'need not rest on precisely the same facts as a previous claim to run afoul of this statutory bar.'" *Poteet*, 551 F.3d at 516 (quoting *LaCorte*, 149 F.2d at 232). If the later-filed complaint "raises the same or a related claim based in a significant measure on the core fact or general conduct relied upon in the first *qui tam* action, § 3730(b)(5)'s first-to-file bar applies." *Id.* (quoting *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 (10th Cir. 2004)).

In this case, the relevant pleadings to compare are the original complaints filed in the 120 Case and the 121 Case.[5] The Complaint filed in the 120 Case

---

[5] Although an Amended Complaint was filed in the 120 Case, it was struck from the docket by Order on October 19, 2010, before the case was transferred, and it was never the operative pleading in that case. 120 Case, Doc. #25. As discussed

alleged the following facts. On May 17, 2005, the Department of Housing and Urban Development ("HUD") announced an award of $20 million to the Springfield Metropolitan Housing Authority ("SMHA") for the revitalization and construction of public housing units at the Lincoln Park development in Springfield, Ohio. 120 Case, Doc. #10 ¶ 10. The award was administered by SMHA, which entered into a contract with Defendants Kapp and Pennrose for the construction project. *Id.* ¶¶ 3, 22-23. The agreement required Defendants and their subcontractors to execute a "Certification and Assurances" form that attested to their compliance with the following laws: the Copeland "Anti-Kickback" Act of 1934, 18 U.S.C. § 874; the Davis-Bacon Act, 40 U.S.C § 276a; and the Contract Work Hours and Safety Standards Act, 40 U.S.C. §§ 327-30. *Id.* ¶ 25. Although the agreement required formal attestation of their compliance with those particular laws, it also obligated Defendants to comply, and to certify compliance, with all applicable federal and state laws. *Id.* ¶ 42-45.

The 120 Complaint also alleged that Defendants, through their managers, officers, and employees, violated the terms of the agreement by submitting claims to SMHA for payment in federal funds, while knowing that they and their subcontractors had violated federal and state laws. *Id.* ¶¶ 49-59. Defendants allegedly "prepared claims for payment or approval" that were "based upon false records," and made no inquiries to establish that the documents were not false. *Id.* ¶¶51-53. The records were alleged to falsely represent the wages and benefits

previously, the relevant pleading for determining jurisdiction in this case is the Complaint filed to commence the action, not the First Amended Complaint.

of workers and compliance with federal and state labor laws, including employment-related immigration laws. *Id.* ¶ 54. In the Complaint, Relators identified twenty-eight subcontractors that had allegedly failed to maintain workers compensation insurance for their employees, fourteen subcontractors who allegedly failed to withhold payroll taxes, and eleven subcontractors who allegedly were not registered to do business in the State of Ohio. *Id.* ¶¶ 70-99. All of these subcontractors were identified by name. *Id.* The Complaint also identified many subcontractors by name and specific dates of payroll documentation that allegedly violated federal law by misclassifying workers, so that they were paid less than prevailing wages. *Id.* Defendants also allegedly used federal funds to pay a flat rate of $5,000 per house to some subcontractors, who in turn paid workers below the prevailing wages, with no benefits or overtime. *Id.*

Finally, the Complaint alleged that Defendants used subcontractors who employed undocumented foreign workers, and it identified individual contractors that allegedly used fake Social Security numbers to employ them. *Id.* ¶¶ 100-110. Specific weeks of payroll records in 2007 allegedly contained claims and charges for work done by these undocumented workers, and Defendants allegedly submitted them to SMHA on behalf of the subcontractors. *Id.* Defendants thereby allegedly obtained payment from the Government for work done in violation of labor and immigration laws. *Id.*

A review of the Complaint in the 121 Case reveals that all of the essential facts of the fraud it alleges had been previously revealed by the 120 Case. The

Complaint in the 121 Case also describes the development agreement and Defendants' obligations to comply with the Copeland "Anti-Kickback" Act of 1934, 18 U.S.C. § 874, the Davis-Bacon Act, 40 U.S.C § 276a, and the Contract Work Hours and Safety Standards Act, 40 U.S.C. §§ 327-30, as well as other federal and state laws.  121 Case, Doc. #2 ¶¶ 29-52.  The newer pleading again alleges that Defendants and their agents violated these laws because they were aware of the violations, but nevertheless submitted claims for payment to SMHA, and, in turn, to the United States.  *Id.* ¶ 56.  Claims were allegedly based on false records and Defendants did not make the necessary inquiries to establish otherwise.  *Id.* ¶¶ 59-60.  Again, Defendants allegedly submitted records and claims that "falsely and improperly represented the wages and benefits paid to workers . . . and . . . compliance" with federal and state labor and employment-based immigration laws.  *Id.* ¶ 64.  Furthermore, the majority of the language of the Complaint in the 121 Case employs language that is identical to the language in the prior pleading when stating these allegations.

Where the pleadings differ, it is mainly because the Complaint in the 121 Case adds new details to the previous allegations of fraud.  For example, it identifies the same subcontractors that allegedly failed to maintain workers compensation insurance, but adds six new names to the list.  *Id.* ¶ 75.  It also adds approximately eighteen new names to the list of subcontractors that allegedly failed to withhold payroll taxes and seven new names to the list of subcontractors that were allegedly not registered to do business in the State of Ohio.  *Id.* ¶ 76.

The newer Complaint again alleges that Defendants and their subcontractors failed to pay prevailing wages by misclassifying workers in payroll documentation and failing to pay benefits and overtime required by the Davis-Bacon Act workers, but names additional subcontractors that allegedly engaged in these acts.  *Id.*  ¶¶ 87-92.  In some cases, the newer pleading provides a precise allegation of the wages that were paid.  *Id.*  Additional specific dates of payroll documentation that violated the labor laws are also mentioned.  *Id.* ¶ 115.  The Complaint in the 121 Case alleges that Pennrose employee Jessica Zuniga informed Relators that Pennrose had knowingly allowed subcontractors to use undocumented alien workers, and alleges that Kapp's agents instructed Spanish-speaking subcontractors how to falsify weekly payroll reports.  *Id.* ¶¶ 57, 62.  However, these details merely flesh out the allegations of the prior case.  They describe the same violations of labor, employment, and immigration laws that Defendants and their subcontractors allegedly engaged in before certifying compliance with those laws to make false claims that formed the basis of the 120 Case.  No additional fraud is alleged, and the earlier case gave the Government sufficient notice of all the fraud described in the later case to enable it to investigate the allegations.

Moore argues that the allegations of the Complaint in the 120 Case failed to satisfy the heightened pleading requirement for fraud under Rule 9(b) of the Federal Rules of Civil Procedure, as required to adequately state a claim under the FCA, and, as a consequence, the earlier pleading could not preempt any later-filed case.  Doc. #58 at 60-61.  The Sixth Circuit has held that "a complaint alleging violations

40

of the False Claims Act must allege the circumstances surrounding the fraud with particularity as required by Rule 9(b)" of the Federal Rules of Civil Procedure. *Walburn*, 431 F.3d at 972 (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)). Thus, in a *qui tam* action brought under the FCA, the relator, "at a minimum, must 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Id.* With regard to intent, Rule 9(b) allows "intent, knowledge, and other conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b). Here, as described above, the 120 Complaint alleged many specific examples of misrepresentation of payroll documents by identifiable subcontractors to support its FCA claims. Furthermore, Rule 9(b) is satisfied by the general allegations that Defendants and their subcontractors intended to defraud the United States, and that they submitted the claims with knowledge that their certifications were false.

In contrast to the Complaint in the 120 Case, the first-filed complaint in *Walburn* failed to comply with Rule 9(b) because its "allegations merely set forth that 'documents' and 'records' relating to the management and operation of the plant were falsified, without specifying the nature of the alleged falsifications." 431 F.3d at 972. In addition, the first-filed complaint "neither identifie[d] which of the named defendants actually submitted falsified 'documents' and 'records' to the government, nor which 'documents' and 'records' contained misrepresentations upon which the government relied." *Id.* Here, in contrast, the

41

Complaint filed in the 120 Case specified the nature of the falsification. It alleged that that payroll documents were falsified with fake Social Security numbers, misrepresentations of worker classifications to avoid prevailing wage requirements, and the omission of withholding taxes. Furthermore, the 120 Complaint identified dozens of subcontractors who allegedly submitted these documents by name and provided specific dates over many weeks when these submissions occurred. These specific allegations contrast with the vague allegations in *Walburn*, and are, therefore, more than adequate to satisfy the Rule (9b) standard for stating a claim brought under the FCA.

Based on the foregoing, the Court concludes that both Complaints allege the same essential facts of fraud. The 121 Case is, therefore, a "related action based on the facts underlying" the 120 Case. As discussed previously, the 120 Case was a "pending action" when this action was filed. For these reasons, the first-to-file bar under 31 U.S.C. § 3730(b)(5) applies, and the Court lacked subject matter jurisdiction over this case from its inception. Accordingly, the Motion to Dismiss (Doc. #51) is sustained, insofar as it seeks dismissal based on the first-to-file bar under 31 U.S.C. § 3730(b)(5).

## IV.    CONCLUSION

For the reasons set forth above, the Motion to Dismiss (Doc. #51) filed by Defendant Pennrose is SUSTAINED IN PART and OVERRULED IN PART. Said motion is sustained on the basis of the first-to-file bar under 31 U.S.C.

42

§ 3730(b)(5), but is overruled with regards to the public disclosure bar under 31 U.S.C. § 3730(e)(4). Because this case was based on the facts underlying an action that was pending when it was filed, it was barred under 31 U.S.C. § 3730(b)(5). The Court, therefore, lacked subject matter jurisdiction over this case from its commencement. Accordingly, the First Amended Complaint (Doc. #39) is STRICKEN, and all claims in the Complaint (Doc. #2) are DISMISSED WITHOUT PREJUDICE.[6]

Defendant Kapp's Motions to Dismiss (Doc. #49 and Doc. #50) are OVERRULED AS MOOT.

Relator Moore's Motion for Leave to File Notice of Supplemental Authority in Support of His Opposition to Defendant Pennrose Properties, LLC's, Motion to Dismiss (Doc. #78) is OVERRULED AS MOOT.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: March 24, 2015 _____

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

_____

[6] If, after dismissal, Relator chooses to again file suit under the FCA against Defendants, the Court notes that certain non-jurisdictional defenses they have raised, such as the arguments of insufficient process under Rule 12(b)(5) or the improper reopening of this case under Rule 60(b), will no longer be relevant.